**GERMANIA FIRE INS. CO. v. FORT WORTH GRAIN & ELEVATOR CO. (No. 719–4409.)**

(Commission of Appeals of Texas, Section A. June 27, 1925.)

1. **Insurance 646(2)—Burden on insurer to establish defense that insured has not complied with warranty.**

In suit on fire insurance policy, burden was on insurer to establish its defense that insured had not complied with warranty requiring him to take an inventory of his stock of goods within 12 months prior to issuance of policy or within 30 days thereafter.

2. **Insurance 665(3)—Evidence held not to show that insured complied with warranty requiring inventory of his stock of goods.**

In suit on fire insurance policy, evidence *held* not to show that insured complied with warranty requiring an inventory to be taken within 12 months prior to issuance of policy, or within 30 days after policy was issued.

3. **Insurance 394—Insurer did not waive right to insist on forfeiture for breach of warranty by adjuster's promise to pay loss, without a showing that he knew of the breach.**

In suit on fire insurance policy, insurer *held* not to waive its right to insist on forfeiture for breach of warranty relating to taking of inventory by insured by its adjuster's promise to pay loss, where there was no showing that at time of his promise, he knew of the breach.

Error to Court of Civil Appeals of Third Supreme Judicial District.

───────────

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Action by the Fort Worth Grain & Elevator Company against the Germania Fire Insurance Company. Judgment for plaintiff was affirmed by the Court of Civil Appeals (271 S. W. 256), and defendant brings error. Reversed and remanded.

Locke & Locke, of Dallas, for plaintiff in error.

Capps, Cantey, Hanger & Short, J. W. Stitt, and W. D. Smith, all of Fort Worth, for defendant in error.

BISHOP, J. On May 2, 1914, plaintiff in error, Germania Fire Insurance Company, issued its policy insuring defendant in error, Fort Worth Grain & Elevator Company, against loss by fire in the sum of $2,000, as follows: $1,200 on their stock of grain and seeds, and $800 on their fixed and movable machinery. On the 27th day of October, 1914, the property covered by the policy was burned. Suit was instituted on the policy by the insured, who recovered judgment in the district court for the loss of both the stock of goods and machinery, and this judgment was by the Court of Civil Appeals affirmed.

This is a companion case to that of German Alliance Ins. Co. v. Fort Worth Grain & Elevator Co. (Tex. Com. App.) 269 S. W. 430. This suit is for loss occasioned by the same fire, and the facts in both cases are practically the same.

[1] The insurance company contends that insured is not entitled to recover for the loss of the stock of goods, for the reason that insured had not taken an inventory within 12 months prior to the issuance of the policy, and did not take such inventory within 30 days after the policy was issued, as required in the record warranty clause contained in the policy as follows:

"Section 1. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and within 12 months of the last preceding inventory if such has been taken. Unless such an inventory has been taken within 12 calendar months prior to the date of this policy, and together with a set of books showing a complete record of business transacted since the taking of such inventory, is on hand at the date of this policy, one shall be taken within 30 days after the date of this policy, or in each and either case this entire policy shall be null and void."

The burden of proof was on the insurance company to establish this defense. This it undertook to do by offering in evidence a sworn statement made by J. R. Stitt, manager, and one of the partners in the firm of Fort Worth Grain & Elevator Company January 28, 1915, from which we quote as follows:

"As to whether or not I took at any time, or there was taken at any time from September, 1911, until the fire (October 27, 1914) an inventory of the stock on hand, I will answer yes. At the time of moving into the new build-ing from the old, one was taken, though there seems to have been no record kept of this inventory, and again on June 13, 1914, the result of which I have given you to-day. With respect to the inventory taken at the time of the removal into the new building, whether before or after such removal, and when the stock was in the new building, it was taken at the time of the removal, taking into account such stock as had been unloaded into the new building, and that which was removed from the old building and into the new. It was commenced on the day of the removal, and was made as the stock was removed by shifting such stock as was left temporarily in the old building. We checked up the stock as it was moved and as it was left temporarily in the old building. As to whether the name and quantity and value of each item of stock was listed in this inventory, I don't remember, but I think so, I don't know how long such inventory was preserved. It does not seem to have been entered on any of the books that I have been able to locate. I do not remember when I last saw it. In fact, I paid very little attention to the invoice after it was made, inasmuch as it was done merely to show how we stood at that time. It was prepared by myself principally, with the assistance of those who were working in the house with us at that time. I can't think who it was with us at that time. The removal occurred in the early fall of 1912. I don't remember the exact date—September, I think. Yes, sir; an inventory was made on the 13th day of June, 1914. Most of the work was done by myself, checking up the amount of sack stuff contained in the building, and of both grains contained in the bins, estimating by the cubic space that the grain occupied at the time, and the securing statement of the books from the bookkeeper as to debits and credits, taking the bank balance from the bank book. I entered these items in an ordinary yellow sheet of paper in pencil, with the results given to-day, overlooking, however, the molasses contained in the vats beneath the building. This was made especially for the benefit of Mr. Matt Harris, who was to become a stockholder in D. A. Cowan's stead. As to whether I mean partner instead of stockholder, I will say yes, you better say partner. This was immediately prior to the transfer of M. M. Egan's interest to D. A. Cowan."

On trial of the case in the district court, Mr. Stitt testified as follows:

"My familiarity with the stock of merchandise we had on hand was due to the fact that I was the buyer for the company, and at that time we were operating on a small capital, and it was necessary for me to keep in close touch with the stock on hand so that I could buy different commodities in such a way that a new car would arrive about the time we were out of the commodity in the bins we had in the house, and, for that reason, practically every day I took an inventory of what was in the building, and there was hardly a night that I could not tell within a very small amount as to what was in the house of each commodity."

"With reference to our arrangement for keeping the different commodities in separate stacks or piles or places in the building, we had different places for keeping each commodi-

ty; for example, all the bran was stacked together, so many sacks high, and all that was necessary was to count the number of tiers and the number of rows of tiers, and it was an easy matter to arrive at the number of bags we had on hand. The same would apply to cotton seed meal and the mixed products, alfalfa hay, and practically everything excepting the bulk stuff which were in the bins above the warehouse.

In regard to this testimony, he further testified:

"As I explained to the jury yesterday, I had to keep a close touch on the stock on hand to know just how and when to buy. As for the manner or form of keeping that inventory, I will say that I could remember it mostly, and, if I put it down at all, I just put it down on a card and kept it on the desk where I could refer to it for the purpose of buying. My recollection is that I would go out into the mill and take a card with me and put down how many bags of bran, how many bags of alfalfa meal, cotton seed meal, and so forth, we had on hand, so that I would know how to buy. After a day or two, those memoranda that I reduced to writing from day to day were thrown into the waste basket. No; we had no further use for them."

The Court of Civil Appeals, on motion for rehearing, held that the testimony of Mr. Stitt raised an issue of fact as to whether the record warranty clause was complied with, and that, in support of the judgment of the trial court, it would be presumed that this issue was decided in favor of the insured on a finding that there was no breach of this section of the record warranty clause.

[2] We cannot agree with this conclusion. The sworn statement of Mr. Stitt, quoted above, clearly shows that no such inventory as was contemplated by this section of the record warranty clause was taken from some time in the early fall of 1912, which was more than 12 months before the policy was issued, until the 13th of June, 1914, which was more than 30 days after the policy was issued. The inventory which he testified he took "practically every day" was clearly, under his evidence, not such an inventory as was contemplated by this record warranty clause of the policy. It was not "a complete itemized inventory of stock on hand." He did not even testify that he did more than take a mental note of the goods on hand. He testified that if he "put it down at all" he "just put it down on a card and kept it on the desk where" he "could refer to it for the purpose of buying."

[3] The insured, though they pleaded that the insurance company waived its right to insist on a forfeiture by reason of the breach of this record warranty clause, by promising to pay the loss after it had knowledge of the fact that this clause had not been complied with, offered no evidence indicating that at the time the adjuster promised to pay the loss he knew of the breach. Mr. Stitt testified that he informed the adjuster that some of their papers, invoices, and inventories were burned, and he could not produce them, but he did not testify, and there is no evidence to indicate, that the adjuster knew of the failure to take an inventory at the time he made the promise to pay. He did testify that the adjuster asked him about their "books, invoices, and so forth" and that he explained that they "did not have a complete set of invoices of our stock of merchandise on hand, nor an inventory." This statement was made, however, with reference to the fact that the papers were burned by the fire which destroyed the goods, and had no reference whatever to the fact that an inventory had not been taken as required by the record warranty clause.

We recommend that the judgments of both the Court of Civil Appeals and district court be reversed, and the cause remanded to the district court.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.